# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

MALIK NETTLES,         )
         )
     Petitioner,      )
         )
vs.         )     **Case No. 4:03 CV 0068 CAS (LMB)**
         )
DON ROPER,         )
         )
     Respondent.     )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the petition of Malik Nettles for a writ of habeas corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

### Procedural History

Petitioner is presently incarcerated at Potosi Correctional Center in Mineral Point, Missouri, pursuant to the judgment and sentence of the Circuit Court of the City of St. Louis, Missouri. See Respondent's Exhibit 11 at 683-87. On March 30, 1998, petitioner was found guilty after a jury trial of first degree murder, second degree murder, first degree assault, and three counts of armed criminal action.[1] See id. He was sentenced to life without the possibility of parole for the first degree murder count, to be served consecutively with five consecutive life sentences for the other counts. See id.

Petitioner raised the following points on direct appeal of his convictions: (1) the trial court

---

[1] A mistrial was declared in a prior trial, due to a hung jury. See Resp't Ex. 6 at 1204.

erred in granting the prosecution's motion in limine and excluding the statements of Michael Durley and Randy Wilkes; (2) the trial court erred in overruling his <u>Batson</u> motion and in finding that the prosecutor provided a race neutral explanation for its strike of Venireperson Waters; (3) the trial court erred in overruling his objections and motion for mistrial when Ruth Ann Young testified that petitioner told her he shot someone in Pagedale; (4) the trial court erred in overruling petitioner's objections and allowing the state to introduce evidence of petitioner's alleged nickname "Homicide"; (5) the trial court erred in ruling that the defense could not cross examine state witness Lakisha Hopson concerning her pending forgery charge; and (6) the trial court erred when it refused to allow petitioner to cross examine Officer Tolias in order to present evidence to show that Ruth Ann Young's source of income was heavily dependent upon her providing information helpful to the State.  <u>See</u> Resp't Ex. 12.  On August 17, the Missouri Court of Appeals for the Eastern District affirmed petitioner's convictions.  <u>See</u> Resp't Ex. 17.  On October 5, 1999, the Missouri Court of Appeals denied petitioner's Motion for Rehearing and Application for Transfer.  <u>See</u> <u>id.</u>  On November 23, 1999, the Missouri Supreme Court ordered the case transferred.  <u>See</u> <u>id.</u>  On February 22, 2000, the Missouri Supreme Court ordered the case retransferred to the Missouri Court of Appeals.  <u>See</u> <u>id.</u>  On March 2, 2000, the Missouri Court of Appeals readopted its opinion of August 17, 1999.  <u>See</u> <u>id.</u>

On October 28,1999, petitioner filed a <u>pro</u> <u>se</u> motion to vacate, set aside, or correct the judgment of the Circuit Court of the City of St. Louis, Missouri, pursuant to Missouri Supreme Court Rule 29.15.  <u>See</u> Resp't Ex. 19 at 3-14.  Petitioner filed a second <u>pro</u> <u>se</u> motion to vacate, set aside, or correct the judgment of the Circuit Court of the City of St. Louis on December 7, 2000.  <u>See</u> <u>id.</u> at 15-21.  On November 8, 2000, after appointment of counsel, petitioner filed an

"Amended Motion to Vacate, Set Aside, or Correct the Judgment or Sentence," in which he argued that he was denied effective assistance of counsel for the following reasons: (1) trial counsel failed to call Michael J. Bethany as a rebuttal witness at trial; (2) trial counsel included in an offer of proof items of evidence that were inadmissible under any circumstances; and (3) trial counsel failed to offer the statements of Trevon Wilkes to corroborate the extrajudicial statements which they sought to have admitted. See id. at 22-33. An evidentiary hearing was held regarding petitioner's postconviction relief motion on June 30, 2000, at which petitioner's trial counsel, Teoffice E. Cooper, Jr. testified on behalf of the State. See Resp't Ex. 18. On April 3, 2001, the motion court denied petitioner's motion for postconviction relief in all respects. See Resp't Ex. 19 at 34-42. Petitioner timely filed a notice of appeal from the denial of postconviction relief. See id. at 43-44.

Petitioner raised two points on appeal from the denial of postconviction relief. See Resp't Ex. 20. Petitioner first argued that the motion court clearly erred in denying his claim that he received ineffective assistance of counsel because trial counsel failed to call Michael Bethany at trial. See id. at 9. In his second point relied on, petitioner claimed that the motion court clearly erred in denying his claim that he received ineffective assistance of counsel because trial counsel included inadmissible hearsay evidence in an offer of proof. See id. at 11. On November 20, 2001, the Missouri Court of Appeals for the Eastern District affirmed the denial of postconviction relief. See Resp't Ex. 22. Petitioner filed a motion to recall the mandate on August 8, 2002, in which he alleged prosecutorial misconduct in his underlying conviction. See Resp't Ex. 23. The Missouri Court of Appeals for the Eastern District denied petitioner's motion on August 13, 2002. See id.

On January 23, 2003, petitioner, pro se, filed the instant petition for a writ of habeas corpus, raising the following grounds for relief: (1) he received ineffective assistance of counsel because trial counsel failed to impeach Lakisha Hopson with prior inconsistent statements; (2) he received ineffective assistance of counsel because trial counsel failed to ask for a curative instruction concerning the testimony of Ruth Ann Young; (3) he received ineffective assistance of counsel because trial counsel failed to produce evidence of agreements for the testimony of Ruth Ann Young and Lakisha Hopson; (4) he received ineffective assistance of counsel because trial counsel failed to investigate Mark Boyd's whereabouts; (5) he received ineffective assistance of counsel because trial counsel failed to question Andre Clarkson regarding how petitioner came into possession of the murder weapon; (6) he received ineffective assistance of counsel because trial counsel failed to call Michael Bethany; (7) he received ineffective assistance of counsel because trial counsel included inadmissible hearsay evidence in an offer of proof; (8) he received ineffective assistance of counsel because trial counsel failed to exclude a nonpositive identification by Shelanda Roberson; (9) he received ineffective assistance of counsel because trial counsel failed to submit a letter written by Lakisha Hopson to petitioner; (10) he received ineffective assistance of counsel because trial counsel failed to further investigate Michael Bethany's willingness to testify; (11) the prosecutor committed prosecutorial misconduct because he knowingly presented hearsay testimony of Ruth Ann Young; (12) the prosecutor committed prosecutorial misconduct because he offered evidence of prior bad acts and uncharged crimes; (13) the prosecutor committed prosecutorial misconduct because he presented false evidence to rehabilitate Lakisha Hopson during re-direct; (14) the prosecutor committed prosecutorial misconduct because he presented false evidence to rehabilitate Lakisha Hopson during direct

examination; (15) the prosecutor committed prosecutorial misconduct because he bribed witnesses Ruth Ann Young and Lakisha Hopson for their testimony; (16) the prosecutor committed prosecutorial misconduct because he presented misleading testimony regarding deals and money exchanged for the testimony of Ruth Ann Young; (17) the prosecutor committed prosecutorial misconduct because he elicited false testimony from Lakisha Hopson regarding the identification of Mark Boyd; (18) petitioner is actually innocent because improper testimony led to his conviction; (19) a <u>Batson</u> violation resulted from the strike of Venireperson Waters; (20) trial error occurred when evidence was admitted that petitioner's nickname is "Homicide;" (21) trial error occurred when the cross-examination of Lakisha Hopson about a forgery charge was limited; (22) the trial court erred in limiting the cross-examination of Officer Tolias regarding Ruth Ann Young's income; and (23) the trial court erred in granting a motion in limine excluding out-of-court statements by Michael Durley and Randy Wilkes. <u>See</u> Doc. No. 4. On March 17, 2003, respondent filed a Response to Order to Show Cause, in which he argues that petitioner has procedurally defaulted the majority of his grounds for relief and that petitioner's remaining grounds for relief fail on their merits. <u>See</u> Doc. No. 9. Petitioner has also filed a Reply to respondent's Response to Order to Show Cause, in which he provides further argument in support of his petition. <u>See</u> Doc. No. 9.

### Facts

The sufficiency of the evidence is not in dispute. The evidence adduced at trial revealed that on February 29, 1996, petitioner walked up to a school bus, got on the bus, shot the bus driver, Richard Lanemann, three times, and shot fifteen-year-old Kyunia Taylor five times. Kyunia Taylor, who was six months pregnant at the time of the shooting, died from the gunshot

wounds that went through her abdomen and chest. Her baby, Diamond Taylor, was delivered by

Cesarean section, but subsequently died from extensive brain damage that was caused by

inadequate blood supply due to the gunshot wounds sustained by her mother. DNA testing

revealed that Mark Boyd was the father of Diamond Taylor. Mr. Boyd hired petitioner to kill Ms.

Taylor because Mr. Boyd did not want to take responsibility for Ms. Taylor's pregnancy.


## Discussion

**I.      Standard of Review**

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. §

2254(d), which provides:

> (d)  An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in the
> > State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in Williams v. Taylor, 529 U.S. 362, 120 S.Ct.

1495, 146 L.Ed.2d 389 (2000). With respect to the "contrary to" language, a majority of the

Court held that a state court decision is contrary to clearly established Federal law "if the state

court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of

law" or if "the state court decides a case differently than [the] Court has on a set of materially

indistinguishable facts." 529 U.S. at 413, 120 S.Ct. at 1523. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." Id. Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409, 120 S.Ct. 1521. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 1410, 120 S.Ct. 522.

## II.     Procedural Default

Respondent contends that petitioner has procedurally defaulted the majority of his grounds for relief. It is well-established that the procedural default rule requires a habeas petitioner to pursue all available avenues of relief in the state courts before the federal courts can consider the claim. See 28 U.S.C. § 2254(b); Duvall v. Purkett, 15 F.3d 745, 746 (8th Cir. 1994). In addressing this issue, a federal court must give deference to state courts and should place great importance on state procedural rules. See Buckley v. Lockhart, 892 F.2d 715, 718 (8th Cir. 1989). By virtue of these considerations, "[a] federal court can consider the merits of a habeas corpus petition only when the prisoner has 'fairly presented to the state courts the substance of his [or her] federal habeas corpus claim.'" Id. (quoting Martin v. Solem, 801 F.2d 324, 333 (8th Cir. 1986)(internal citations omitted). To avoid procedural default, "Missouri procedure requires that a claim be presented 'at each step of the judicial process.'" Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994)(quoting Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)), cert. denied,

513 U.S. 983, 115 S. Ct. 462, 130 L.Ed.2d 370 (1994). If a petitioner cannot demonstrate cause, then the court need not determine whether the petitioner has suffered actual prejudice. See Leggins v. Lockhart, 822 F.2d 764, 768 (8th Cir. 1987), cert. denied, 485 U.S. 907, 108 S. Ct. 1080, 99 L.Ed.2d 239 (1988).

In the present case, petitioner failed to raise the ineffective assistance of counsel claims contained in his first, second, third, fourth, fifth, eighth, and ninth grounds for relief in his motion for postconviction relief or in his appeal from the denial of postconviction relief. Further, petitioner did not raise the prosecutorial misconduct claims contained in his eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, and eighteenth grounds for relief in his direct appeal, nor did he allege that his direct appeal counsel provided ineffective assistance in failing to raise these claims. With regard to petitioner's twenty-second ground for relief, petitioner failed to make an offer of proof as to what Officer Tolias would have said on this issue and petitioner did not allege in his postconviction relief motion that trial counsel provided ineffective assistance for failing to make an offer of proof on this point. Finally, with regard to petitioner's twenty-third ground for relief, although petitioner submitted an offer of proof in connection with the motion in limine, the Missouri Court of Appeals found that the offer of poof failed because it contained inadmissible evidence and the Court thus rejected this claim. Thus, petitioner has defaulted these claims by failing to properly present them to the state courts.

Petitioner fails to allege "cause" for his procedural default. Petitioner argues that he raised all of his ineffective assistance of counsel claims in his motion for postconviction relief. A review of the record, however, reveals that petitioner only raised the ineffective assistance of counsel claims contained in grounds six, seven, and ten in his postconviction relief motion and in

his appeal from the denial of that motion. Petitioner has not illustrated cause to excuse his procedural default. As such, this court need not address the "actual prejudice" prong of the inquiry. See Leggins, 822 F.2d at 768.

A federal habeas court may also reach the merits of procedurally defaulted claims where the petitioner can demonstrate that a "miscarriage of justice" exception applies. This narrow exception is limited to extraordinary circumstances where actual innocence can be demonstrated. See Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). The petitioner must show that a constitutional violation "probably resulted" in the conviction of an innocent person. See Schlup v. Delo, 513 U.S. 298, 326-29, 115 S.Ct. 851, 867-68, 130 L.Ed.2d 808 (1995). Petitioner does claim that his procedural default should be excused under the miscarriage of justice exception because he is actually innocent. The evidence, however, is strongly supportive of petitioner's guilt and petitioner has presented no additional evidence suggesting his innocence. Petitioner's bare allegation that he is innocent is insufficient to excuse his procedural default. Thus, petitioner has procedurally defaulted his first, second, third, fourth, fifth, eighth, ninth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, twenty-second, and twenty-third grounds for relief.

## III.     Petitioner's Claims

Petitioner raises twenty-three grounds for relief. Specifically, petitioner raises ten ineffective assistance of counsel claims, eight prosecutorial misconduct claims, and five trial error claims. The undersigned will address each ground for relief in turn.

**Ineffective Assistance of Counsel Claims**

In grounds one through ten, petitioner raises ineffective assistance of counsel claims. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his attorney failed to exercise the degree of skill and diligence a reasonably competent attorney would exercise under similar circumstances, and additionally, the petitioner must show that he was prejudiced by his attorney's action or inaction. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A petitioner must show that "counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment." Id. "Prejudice" is shown by a petitioner when it is demonstrated that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Id. at 694, 104 S.Ct. at 2068. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. Id. The petitioner must not only assert prejudice, but must affirmatively prove that prejudice was present. See id. at 693, 104 S.Ct. at 2067. A habeas petitioner "must overcome the strong presumption that in the circumstances of his case 'the challenged action might be considered sound trial strategy.' " Seehan v. State of Iowa, 72 F.3d 607, 611 (8th Cir. 1995) (quoting Strickland, 466 U.S. at 689, 104 S.Ct. at 2065).

**1.      Ground One**

In his first ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to impeach Lakisha Hopson with prior inconsistent statements. Respondent contends that this claim should be denied because petitioner has procedurally defaulted the claim by not properly raising it before the state courts.

The court has already pointed out that petitioner has procedurally defaulted this claim.

Even if it were not procedurally defaulted, petitioner's claim fails on its merits as well. The record reveals that defense counsel extensively questioned Ms. Hopson regarding prior inconsistent statements during cross-examination. Specifically, defense counsel questioned Ms. Hopson regarding inconsistent statements she made to detectives with the North Central Drug Task Force and inconsistencies in her deposition testimony. <u>See</u> Resp't Ex. 4 at 2446-2477. As such, petitioner has not shown that trial counsel failed to exercise the degree of skill and diligence of a reasonably competent attorney in his questioning of Ms. Hopson.

Accordingly, the undersigned recommends that petitioner's first ground for relief be denied.

**2.      Ground Two**

In his second ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to ask for a curative instruction concerning the testimony of Ruth Ann Young. Respondent contends that this claim should be denied because petitioner has procedurally defaulted the claim by not properly raising it before the state courts.

The court has already pointed out that petitioner has procedurally defaulted this claim. Even if it were not procedurally defaulted, petitioner's claim fails on its merits as well. The following testimony was elicited during the prosecution's direct examination of Ruth Ann Young:

> [PROSECUTION]:And during that trip, how were you able to hear the statement made by [petitioner]?
> [MS. YOUNG]: 'Cause he was kind of depressed. He was kind of like he don't smoke bud no more 'cause it depresses him. It just makes him think. He was, like, uh–I mean, that like started before, a month or whatever. When we got down to the riverfront, we started talking. He said he done something he wish he hadn't He wasn't gonna say how long ago it happened, whatever. Then he said he killed the girl on the bus, because, before then, he said he had shot somebody over in Pagedale–
> > [DEFENSE COUNSEL]: Your Honor, I'm going to object to the narrative form of this response.

- 11 -

> THE COURT: The objection will be sustained as to the narrative. Please ask a question, [prosecutor].
>
> [PROSECUTOR]: Let's break this down, please.
>
> [DEFENSE COUNSEL]: Your Honor, may we approach?
>
> THE COURT: Yes, you may.
>
> [The following proceeding took place at the bench outside the hearing of the jury:]
>
> [DEFENSE COUNSEL]: Your Honor, at this time, I'm going to request a mistrial. [The prosecutor] has elicited testimony regarding uncharged misconduct, and I don't think there's any remedy that would be sufficient outside of a mistrial.
>
> THE COURT: All right. I believe that the young lady offered up without a question some testimony with respect to some matter that may have occurred in Pagedale. You made a timely objection. It was sustained. Do you wish to make a record?
>
> [DEFENSE COUNSEL]: Are you denying the request for the mistrial?
>
> THE COURT: It will be overruled and denied.
>
> [DEFENSE COUNSEL]: That ruling violates my client's constitutional rights and I would object to the ruling on the basis of the stipulation filed between the prosecution and the defense.

Resp't Ex. 4 at 2359-2360.

The failure to request a curative instruction does not, by itself, constitute constitutional error. See Phea v. Benson, 95 F.3d 660, 662 (8th Cir. 1996). Here, although defense counsel did not request a curative instruction, he vehemently objected to the prosecution's question and the trial court sustained the objection. Defense counsel also requested a mistrial and constitutionalized his objection to the court's denial of his motion for a mistrial. Defense counsel expressed the opinion that the only cure for the error committed was a mistrial. Under these circumstances, petitioner has not shown that trial counsel failed to exercise the degree of skill and diligence of a reasonably competent attorney.

Accordingly, the undersigned recommends that petitioner's second ground for relief be denied.

**3.      Ground Three**

In his third ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to produce evidence of agreements between the prosecution and Ruth Ann Young and Lakisha Hopson, whereby the prosecution paid these witnesses for their testimony.  Respondent contends that this claim should be denied because petitioner has procedurally defaulted the claim by not properly raising it before the state courts.

The court has already pointed out that petitioner has procedurally defaulted this claim. Even if it were not procedurally defaulted, petitioner's claim fails on its merits as well.  Petitioner claims that defense counsel failed to present evidence showing that the prosecution paid Ruth Ann Young and Lakisha Hopson for their testimony.  The record, however, reveals that defense counsel questioned these witnesses extensively regarding payments received from the State. Defense counsel elicited from Ms. Hopson on cross-examination that the State was paying her $50.00 a week while she testified in petitioner's trial.  See Resp't Ex. 4 at 2476.  Defense counsel also elicited testimony from Ms. Young on cross-examination that she had received payments from the North Central Drug Task Force.  See id. at 2382.  Ms. Young further testified that the only income she received at that time was from the State for being an informant.  See id. at 2401. As such, any additional evidence of payments by the State to these witnesses would have been cumulative.  Thus, petitioner has not shown that defense counsel failed to exercise the degree of skill and diligence of a reasonably competent attorney.

Accordingly, the undersigned recommends that petitioner's third ground for relief be denied.

**4.**        **Ground Four**

In his fourth ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to investigate Mark Boyd's whereabouts.  Specifically, petitioner states that defense counsel offered records kept by Mr. Boyd's co-worker, which indicated that Mr. Boyd was out of town working during the time period he allegedly met with petitioner to plan the murder.  Petitioner contends that defense counsel should have offered records maintained by Mr. Boyd's employer rather than the co-worker's personal records.  Respondent contends that this claim should be denied because petitioner has procedurally defaulted the claim by not properly raising it before the state courts.

The court has already pointed out that petitioner has procedurally defaulted this claim.  Even if it were not procedurally defaulted, petitioner's claim fails on its merits as well.  Robert Bobo testified that he worked for Hogan Transports as a truck driver from July of 1995 through March of 1996.  See id. at 2519.  Mr. Bobo stated that during this time period he was assigned to train Mark Boyd.  See id. at 2521.  Mr. Bobo testified that, as part of this training, Mr. Boyd accompanied him on a trip to California on February 21, 1996 through February 28, 1996.  See id. at 2529.  Mr. Bobo testified that he kept personal records documenting when he crossed state lines and the amount of miles driven by each driver.  See id. at 2525.  Mr. Bobo's phone records were also introduced into the record, which documented phone calls Mr. Bobo made during the trip to California.  See id. at 2532-2535.

Defense counsel presented sufficient evidence to support the defense's position that Mr. Boyd was out of town working from February 21, 1996 through February 28, 1996 and thus could not have met with petitioner during this time period.  Additional evidence regarding Mr.

Boyd's whereabouts would not have shown petitioner's innocence of the crimes. Further, Mr. Boyd still could have met with petitioner prior to the day he left for his trip on February 21, 1996, or after he returned from the trip on February 28, 1996, which was the evening prior to the murder. As such, petitioner is unable to demonstrate prejudice from trial counsel's failure to present official records from Mr. Boyd's employer. Thus, petitioner has not shown that trial counsel provided ineffective assistance.

Accordingly, the undersigned recommends that petitioner's fourth ground for relief be denied.

### 5. Ground Five

In his fifth ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to question Andre Clarkson regarding how petitioner came into possession of the murder weapon. Petitioner claims that Mr. Clarkson would have testified that petitioner did not come into possession of the murder weapon until March 1996, thereby rebutting the testimony of Lakisha Hopson and Ruth Ann Young. Petitioner argues that defense counsel asserted in his opening statement that Mr. Clarkson would testify that petitioner did not come into possession of the murder weapon until March of 1996. Respondent contends that this claim should be denied because petitioner has procedurally defaulted the claim by not properly raising it before the state courts.

The court has already pointed out that petitioner has procedurally defaulted this claim. Even if it were not procedurally defaulted, petitioner's claim fails on its merits as well. Counsel's decision not to interview or call a particular witness is evaluated from the perspective of counsel at the time the decision was made. Parker v. Bowersox, 94 F.3d 458, 461 (8th Cir. 1996). The

question is whether trial counsel's performance, when viewed in this light, "fell outside the wide range of professionally reasonable performance." Id. (citing Strickland, 406 U.S. at 687, 104 S.Ct. at 2064). An attorney's performance is objectively reasonable, where counsel determined that testimony from witnesses identified by a defendant would be detrimental and rationally declined to call the witnesses as a matter of trial strategy. See United States v. Smith, 62 F.3d 1073, 1078 (8th Cir. 1995).

It is true that defense counsel asserted in his opening statement that the evidence would show that Mark Boyd came to petitioner's home on March 8, 2006, and gave petitioner's brother, Andre Clarkson, the murder weapon in exchange for money. See Resp't Ex. 3 at 1682. Mr. Clarkson, however, did not testify at petitioner's trial. Defense counsel has not had the opportunity to provide an explanation for not calling Mr. Clarkson to testify because petitioner did not raise this claim before the state courts. It is possible that either Mr. Clarkson was unwilling to testify, as was the case with several other endorsed witnesses of the defense, or that defense counsel subsequently determined that Mr. Clarkson would not be a favorable defense witness. In fact, at petitioner's first trial, Mr. Clarkson testified on behalf of the State. See Resp't Ex. 6 at 570. In the first trial, Mr. Clarkson did not provide any testimony regarding the murder weapon.

Petitioner has not shown that Mr. Clarkson was willing to testify at his second trial or that Mr. Clarkson's testimony would have aided his defense. Further, defense counsel extensively questioned Lakisha Hopson and Ruth Ann Young on cross-examination regarding inconsistencies in their statements concerning the murder weapon and their motivation to testify. Thus, petitioner has fallen short of showing that trial counsel's failure to call Andre Clarkson to testify regarding

the murder weapon "fell outside the wide range of professionally reasonable performance."

Accordingly, the undersigned recommends that petitioner's fifth ground for relief be denied.

### 6.    Ground Six

In his sixth ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to call Michael Bethany. Petitioner claims that Mr. Bethany would have rebutted the testimony of Lakisha Hopson that she and petitioner attended a meeting with Mr. Boyd where petitioner received $2000.00, that Mr. Bethany helped petitioner count the money received from Mr. Boyd, and that petitioner had been intimate with Ms. Hopson. Respondent contends that this claim should be denied because petitioner has procedurally defaulted the claim by not properly raising it before the state courts. The undersigned, however, has found that petitioner raised this same claim in his postconviction relief motion and in his appeal from the denial of that motion. As such, this claim is properly before the court.

Petitioner's trial counsel, Teoffice Cooper, testified at petitioner's evidentiary hearing. See Resp't Ex. 18. Mr. Cooper testified that he spoke to Mr. Bethany while he was incarcerated, after which he had not yet determined whether Mr. Bethany would be a valuable defense witness. See id. at 8-9. Mr. Cooper stated that he told Mr. Bethany he would like to talk to him further upon his release. See id. at 9. Mr. Cooper testified that he later learned that Mr. Bethany was incarcerated in St. Louis City Jail. See id. Mr. Cooper stated that he contacted Mr. Bethany's attorney, who informed Mr. Cooper that he would advise his client not to testify for petitioner. See id. at 10. Mr. Cooper acknowledged that two State witnesses who implicated petitioner also implicated Mr. Bethany. See id. at 11. Mr. Cooper testified that he believed Mr. Bethany more

likely presented more problems to the defense than he solved and that when he learned Mr. Bethany would not testify on advice of counsel, this foreclosed any further efforts on his part. See id. at 12.

The motion court held as follows with regard to petitioner's claim:

> Bethany did not testify at the postconviction motion hearing nor did [petitioner] present any evidence. Statements in a post conviction motion are not self proving. Even assuming that Bethany would have impeached the State's witness testimony as alleged in the amended motion, such impeachment would not have provided [petitioner] with a defense. Nothing in the trial or postconviction motion record indicates that this witness would have testified if called. This allegation is without merit and denied.

Resp't Ex. 19 at 40.

Petitioner has not demonstrated that the decision of the motion court was contrary to, or involved an unreasonable application of, clearly established federal law. Trial counsel testified that he spoke to Mr. Bethany's counsel, who informed him that she advised Mr. Bethany not to testify for petitioner. Trial counsel further testified that, in his opinion, Mr. Bethany's testimony would have likely presented more problems for the defense than it would have solved. The motion court was well-positioned to assess the credibility of trial counsel and found his testimony to be credible. Thus, petitioner has failed to demonstrate that trial counsel provided ineffective assistance in not calling Mr. Bethany to testify.

Accordingly, the undersigned recommends that petitioner's sixth ground for relief be denied.

### 7.    Ground Seven

In his seventh ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel included inadmissible hearsay evidence in an offer of proof concerning out-of-court statements by Michael Durley. Respondent contends that the state courts

properly determined that there was no reasonable probability that the outcome of petitioner's trial would have changed had the evidence been admitted.

In his direct appeal, petitioner argued that the trial court erred in granting the prosecution's motion in limine and excluding the statements of Michael Durley and Randy Wilkes. The Missouri Court of Appeals found that petitioner's offer of proof failed because it contained items of evidence that were inadmissible. See Resp't Ex. 17 at 5. The Court, therefore, declined review of this issue. See id.

Trial counsel testified at the evidentiary hearing in connection with petitioner's postconviction relief motion that Michael Durley confessed to the murder to Robert and Randy Wilkes. See Resp't Ex. 18 at 14. Trial counsel stated that Robert and Randy Wilkes invoked the Fifth Amendment at a pre-trial proceeding. See id. at 15. Trial counsel testified that he then made an offer of proof, in which he attempted to make as full and complete a record as possible regarding Mr. Durley's confession. See id. at 16. Trial counsel testified that he included in his offer of proof statements that the Wilkes brothers made to each other and to the police regarding Mr. Durley's confession, statements that Michael Durley made to the police in which he confessed that he was the triggerman in the murder, transcripts reflecting those statements, and results of a polygraph examination taken by Mr. Durley. See id. at 16.

The motion court, which was also the trial court, held as follows with regard to petitioner's claim:

[t]his Court thoroughly reviewed the documents presented and determined that the statements at issue lacked reliability under the Chamber v. Mississippi, 410 U.S. 284 (1973) test. Therefore this Court cannot say that its ruling would or should have been overturned had this claim been reviewed. Further this Court notes that there was strong evidence of [petitioner's] guilt which evidence came from multiple sources, including testimony that Defendant was seen with a gun similar to the murder weapon before the

shooting, that [petitioner] met with the man alleged to have hired [petitioner] to kill the victim who told [petitioner] he would pick him up the morning of the shooting, that two men in a car similar to Boyd's were seen near the shooting, that Boyd was witnessed giving [petitioner] a large sum of cash prior to the shooting and after the shooting, that [petitioner] told a witness that he had been offered money to kill the victim and admitted to another that he had killed the victim. In light of the strong evidence of [petitioner's] guilt this Court further finds there is no reasonable probability that the result of the proceeding would have been different. This allegation is without merit and denied.

Resp't Ex. 19 at 40-41.

Petitioner has not demonstrated that the decision of the motion court was contrary to, or involved an unreasonable application of, clearly established federal law. Trial counsel testified that he admitted the evidence at issue in an attempt to make as full and complete a record as possible of Mr. Durley's statements. Trial counsel stated that, because Michael Durley, Randy Wilkes, and Robert Wilkes all refused to testify, he included every piece of evidence that he had to support the defense position that Mr. Durley confessed to the murder. The trial court determined that the statements petitioner sought to admit lacked reliability under the Chamber v. Mississippi, 410 U.S. 284 (1973) test. Further, significant evidence of petitioner's guilt was presented at trial by the prosecution. As such, petitioner is unable to demonstrate that the result would have been different on appeal had trial counsel not included inadmissible evidence in his offer of proof.

Accordingly, the undersigned recommends that petitioner's seventh ground for relief be denied.

### 8. Ground Eight

In his eighth ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to exclude a nonpositive identification by Shelanda Roberson. Respondent contends that this claim should be denied because petitioner has procedurally

defaulted the claim by not properly raising it before the state courts.

The court has already pointed out that petitioner has procedurally defaulted this claim. Even if it were not procedurally defaulted, petitioner's claim fails on its merits as well. Petitioner claims that trial counsel should have excluded Ms. Roberson's testimony because Ms. Roberson did not conclusively identify petitioner as the shooter. A review of the record reveals that Ms. Roberson identified petitioner in court as the person she selected in a police lineup who "looked like the one that got on the bus and shot Kyunia." See Resp't Ex. 3 at 1986. Defense counsel objected to the record reflecting that the witness made an in-court identification of petitioner. See id. at 1987. The trial court, however, overruled defense counsel's objection. See id. Defense counsel extensively questioned Ms. Roberson regarding her identification of petitioner on cross-examination. See id. at 1991-1996. Thus, petitioner has not demonstrated that trial counsel provided ineffective assistance in failing to exclude the identification of petitioner by Shelonda Roberson.

Accordingly, the undersigned recommends that petitioner's eight ground for relief be denied.

### 9. Ground Nine

In his ninth ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to submit a letter written by Lakisha Hopson to petitioner that would have impeached Ms. Hopson's testimony. Petitioner argues that after he gave this letter to defense counsel, defense counsel presented the letter to the prosecution, and the letter was subsequently lost. Respondent contends that this claim should be denied because petitioner has procedurally defaulted the claim by not properly raising it before the state courts.

The court has already pointed out that petitioner has procedurally defaulted this claim. Even if it were not procedurally defaulted, petitioner's claim fails on its merits as well. Petitioner claims that the transcript from the first trial reveals that this letter existed because the prosecution referenced the letter during its direct examination of Ms. Hopson. The following colloquy took place during the prosecution's direct examination of Ms. Hopson in petitioner's first trial:

> [PROSECUTOR]: Now, did you write a letter to Malik?
> [MS. HOPSON]: Yes.
> [PROSECUTOR]: And did you write a letter while he was confined?
> [MS. HOPSON]: Yes.
> [PROSECUTOR]: And what did you say in your letter?
> [MS. HOPSON]: I actually don't recall.
>      [DEFENSE COUNSEL]: Your Honor, I'm going to object to this.
>      THE COURT: All right, the objection is sustained.
> [PROSECUTOR]: Why did you write him that letter?
> [MS. HOPSON]: Because we had–I knew sooner or later they were gonna know that we was the secret witnesses, and I actually didn't want him to know that it was us. And I wanted him to know we had been talking to them, so I be writin' my letter. I thought maybe he would think that I still was his friend.

Resp't Ex. 6 at 1005-1006.

Although this testimony does suggest that Ms. Hopson in fact wrote a letter to petitioner, it does not show that the introduction of this letter at trial would have been helpful to petitioner's defense. Ms. Hopson indicated in her testimony at petitioner's first trial that she wrote a letter pretending to be petitioner's friend prior to petitioner's first trial, out of fear that petitioner would discover that she would be testifying against him at trial. Petitioner has not described the contents of Ms. Hopson's letter or how it would have assisted his defense. As such, petitioner has failed to establish prejudice by defense counsel's failure to submit Ms. Hopson's letter.

Accordingly, the undersigned recommends that petitioner's ninth ground for relief be denied.

**10.     Ground Ten**

In his tenth ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to further investigate Michael Bethany's willingness to testify. This is essentially the same claim petitioner raised in his sixth ground for relief. The undersigned has found that trial counsel did not provide ineffective assistance in failing to call Mr. Bethany because trial counsel discovered that Mr. Bethany's counsel advised him not to testify and because trial counsel determined that Mr. Bethany's testimony would have likely presented more problems for the defense than it would have solved. Because trial counsel ultimately determined that Mr. Bethany's testimony would not have been helpful to the defense, it was unnecessary for counsel to further investigate Mr. Bethany's willingness to testify. Thus, petitioner has failed to demonstrate that trial counsel provided ineffective assistance .

Accordingly, the undersigned recommends that petitioner's tenth ground for relief be denied.

### Prosecutorial Misconduct Claims

In grounds eleven through eighteen, petitioner alleges prosecutorial misconduct claims. The court has already pointed out that petitioner has procedurally defaulted these claims. Even if they were not procedurally defaulted, petitioner's claims fails on their merits as well. "[P]rosecutorial misconduct does not merit federal habeas relief unless the misconduct infected the trial with enough unfairness to render [petitioner's] conviction a denial of due process." Louisell v. Dir. of Iowa Dept. Of Corr., 178 F.3d 1019, 1023 (8th Cir. 1999) (quoting Roberts v. Bowersox, 137 F.3d 1062, 1066 (8th. Cir. 1998). See Stringer v. Hedgepeth, 280 F.3d 826, 829 (8th Cir. 1998). A petitioner seeking habeas relief must show both that the prosecutor engaged in

misconduct and that there is a "reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety the verdict probably would have been different." Stringer, 280 F.3d at 829 (quoting Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995)).

### 11. Ground Eleven

In his eleventh ground for relief, petitioner argues that the prosecutor committed prosecutorial misconduct because he knowingly presented hearsay testimony of Ruth Ann Young. Specifically, petitioner claims that Ms. Young initially told police that she discovered petitioner was involved in the murder through conversations she had with Michael Bethany, yet at trial she testified that she personally observed certain events. Petitioner alleges that the prosecution, therefore, knowingly presented perjured testimony. Respondent contends that this claim should be denied because petitioner has procedurally defaulted the claim by not properly raising it before the state courts.

Petitioner has failed to demonstrate that the prosecutor engaged in misconduct. Petitioner has not shown that Ms. Young's testimony was false or that the prosecution had knowledge that Ms. Young's testimony was false. Further, defense counsel had ample opportunity to impeach Ms. Young's testimony and did extensively question Ms. Young regarding prior inconsistent statements on cross-examination.

Accordingly, the undersigned recommends that petitioner's eleventh ground for relief be denied.

### 13. Ground Twelve

In his twelfth ground for relief, petitioner argues that the prosecutor committed

prosecutorial misconduct because he offered evidence of prior bad acts and uncharged crimes.

Petitioner specifically objects to testimony the prosecution elicited from Ruth Ann Young

regarding a prior shooting. Petitioner also objects to testimony regarding petitioner's drug use

and possession of guns. Respondent contends that this claim should be denied because petitioner

has procedurally defaulted the claim by not properly raising it before the state courts.

The court has already discussed the testimony at issue with respect to petitioner's second

ground for relief, in which he argued that he received ineffective assistance of counsel because

trial counsel failed to ask for a curative instruction regarding Ms. Young's testimony. The

relevant testimony provides as follows:[2]

> [PROSECUTOR]: When you indicated that, getting back to your discussion with [Officer]
> Tolias, you indicated that Malik had said something to you about that particular case in
> the City where the little girl had been shot on the school bus, is that right?
> [MS. YOUNG]: Yes.
> [PROSECUTOR]: Did this conversation occur down on the riverfront?
> [MS. YOUNG]: Yes.
> [PROSECUTOR]: During one of these trips that were made?
> [MS. YOUNG]: Yes.
> [PROSECUTOR]: And during that trip, how were you able to hear the statement made by
> Malik?
> [MS. YOUNG]: 'Cause he was kind of depressed. He was kind of like he don't smoke
> bud no more 'cause it depresses him. It just makes him think. He was, like, uh–I mean,
> that like started before, a month or whatever. When we got down to the riverfront, we
> started talking. He said he done something he wish he hadn't. He wasn't gonna say how
> long ago it happened, whatever. Then he said he killed the girl on the bus, because, before
> then, he said he had shot somebody over in Pagedale–
> > [DEFENSE COUNSEL]: Your Honor, I'm going to object to the narrative form
> > of this response.
> > THE COURT: The objection will be sustained as to the narrative. Please ask a
> > question, [prosecutor].

---

[2]Most of this testimony was quoted earlier on pages 11 and 12 of this report and
recommendation and is offered as a convenience to the reader and as an alternative to requiring
the reader to turn back and forth to find and read the testimony again referred to by the petitioner.

[PROSECUTOR]: Let's break this down, please.

[DEFENSE COUNSEL]: Your Honor, may we approach?

THE COURT: Yes, you may.

[The following proceeding took place at the bench outside the hearing of the jury:]

[DEFENSE COUNSEL]: Your Honor, at this time, I'm going to request a mistrial. [Prosecutor] has elicited testimony regarding uncharged misconduct, and I don't think there's any remedy that would be sufficient outside of a mistrial.

THE COURT: All right. I believe that the young lady offered up without a question some testimony with respect to some matter that may have occurred in Pagedale. You made a timely objection. It was sustained. Do you wish to make a record?

[DEFENSE COUNSEL]: Are you denying the request for the mistrial?

THE COURT: It will be overruled and denied.

[DEFENSE COUNSEL]: That ruling violates my client's constitutional rights and I would object to the ruling on the basis of the stipulation filed between the prosecution and the defense.

Resp't Ex. 4 at 2358-2360.

Although Ms. Young provided improper testimony regarding a prior shooting, this testimony was not elicited by the prosecution. The prosecution specifically asked Ms. Young about the shooting in question. In answering this question, Ms. Young offered unsolicited testimony regarding a prior shooting in Pagedale. Defense counsel objected to this testimony and the trial court sustained the objection. In doing so, the court acknowledged that Ms. Young offered testimony regarding the prior shooting without being asked about such an incident by the prosecutor. As such, the prosecutor did not intentionally elicit testimony regarding a prior shooting.

With regard to evidence regarding petitioner's drug use, the evidence adduced at trial showed that Ms. Young, Ms. Hopson, and petitioner routinely gathered to socialize with a group of people in their neighborhood, which involved using drugs and alcohol. Ms. Young and Ms. Hopson testified that they learned of petitioner's involvement in the murder during these social

gatherings. It was in the context of recounting events and conversations among this social group that testimony regarding petitioner's drug use was elicited. With respect to petitioner's possession of guns, the only such testimony elicited by the prosecution related to the murder weapon, which was clearly a key issue in the prosecution's case. Thus, petitioner has failed to establish that the prosecutor engaged in misconduct by eliciting evidence of prior bad acts and uncharged crimes.

Accordingly, the undersigned recommends that petitioner's twelfth ground for relief be denied.

### 13.    Ground Thirteen

In his thirteenth ground for relief, petitioner argues that the prosecutor committed prosecutorial misconduct because he presented false evidence to rehabilitate Lakisha Hopson during re-direct. Petitioner claims that Ms. Hopson stated in earlier interviews that she had never witnessed petitioner in possession of a handgun, yet at trial, Ms. Hopson testified that she personally observed petitioner with a handgun. Respondent contends that this claim should be denied because petitioner has procedurally defaulted the claim by not properly raising it before the state courts.

Petitioner has failed to demonstrate that the prosecutor engaged in misconduct. Petitioner has not shown that Ms. Hopson's testimony was false or that the prosecution had knowledge that Ms. Hopson's testimony was false. Further, defense counsel had ample opportunity to impeach Ms. Hopson's testimony and did extensively question Ms. Hopson regarding prior inconsistent statements.

Accordingly, the undersigned recommends that petitioner's thirteenth ground for relief be denied.

**14.    Ground Fourteen**

In his fourteenth ground for relief, petitioner argues that the prosecutor committed prosecutorial misconduct because he presented false evidence to rehabilitate Lakesha Hopson during direct examination.  This is the same claim petitioner raised in his thirteenth ground for relief except petitioner challenges testimony elicited by the prosecution on direct as opposed to re-direct.  The undersigned has determined that petitioner has failed to demonstrate that the prosecutor engaged in misconduct because he is unable to show that Ms. Hopson's testimony was false or that the prosecutor knew Ms. Hopson's testimony was false.

Accordingly, the undersigned recommends that petitioner's fourteenth ground for relief be denied.

**15.    Ground Fifteen**

In his fifteenth ground for relief, petitioner argues that the prosecutor committed prosecutorial misconduct because the prosecution bribed witnesses Ruth Ann Young and Lakisha Hopson for their testimony.  Respondent contends that this claim should be denied because petitioner has procedurally defaulted the claim by not properly raising it before the state courts.

Petitioner has failed to present evidence that the prosecution bribed witnesses Ruth Ann Young and Lakesha Hopson for their testimony.  Ms. Young testified that she acted as a confidential informant for the North Central Drug Task Force, and that she was occasionally paid for her services.  See Resp't Ex. 4 at 2355, 2382.  Ms. Young also testified that she was receiving $50.00 a week from the State during petitioner's trial.  See id. at 2379, 2401.  Ms. Hopson testified that she was also receiving $50.00 a week from the State at the time of the trial.  See id. at 2440.  Ms. Hopson explained that this money was given to her as support, as she was not able to

work during the trial.  See id.  The payment these witnesses received during trial does not constitute bribery for testifying favorably for the prosecution, nor has petitioner presented any evidence that these witnesses received payment from the prosecution in exchange for favorable testimony.  Thus, petitioner has failed to demonstrate that the prosecution engaged in misconduct.

Accordingly, the undersigned recommends that petitioner's fifteenth ground for relief be denied.

### 16.    Ground Sixteen

In his sixteenth ground for relief, petitioner argues that the prosecutor committed prosecutorial misconduct because he presented misleading testimony regarding deals and money exchanged for the testimony of Ruth Ann Young.  Specifically, petitioner claims that the prosecutor misled the jury by eliciting from Ms. Young that she only received $50.00 a week from the State, where she had previously received other payments from the State.  Respondent contends that this claim should be denied because petitioner has procedurally defaulted the claim by not properly raising it before the state courts.

Petitioner has not shown that the prosecution misled the jury in any way.  In fact, the prosecutor elicited from Ms. Young on direct examination that she worked for the North Central Drug Task Force as a confidential informant and that she had received payment for her services. See id. at 2355.  Petitioner has not shown that Ms. Young received any additional compensation for her testimony, other than the $50.00 a week that the State paid her during the trial.  Thus, petitioner has failed to demonstrate that the prosecutor engaged in misconduct by misleading the jury.

Accordingly, the undersigned recommends that petitioner's sixteenth ground for relief be

denied.

### 17. Ground Seventeen

In his seventeenth ground for relief, petitioner argues that the prosecutor committed prosecutorial misconduct because the prosecution elicited false testimony from Lakisha Hopson regarding the identification of Mark Boyd. Specifically, petitioner claims that in earlier interviews, Ms. Hopson did not identify Mr. Boyd when presented with photographs, yet at trial she identified Mr. Boyd. Respondent contends that this claim should be denied because petitioner has procedurally defaulted the claim by not properly raising it before the state courts.

Petitioner has failed to show that Ms. Hopson's testimony at trial was false or that the prosecutor knew that Ms. Hopson's testimony was false. As such, petitioner has not established that the prosecutor engaged in misconduct by eliciting testimony from Ms. Hopson identifying Mr. Boyd.

Accordingly, the undersigned recommends that petitioner's seventeenth ground for relief be denied.

### 18. Ground Eighteen

In his eighteenth ground for relief, petitioner argues that he is actually innocent because improper testimony led to his conviction. Specifically, petitioner claims that the acts of prosecutorial misconduct described in his previous claims were so prejudicial that it was impossible to receive a fair trial. The undersigned has found that petitioner's prosecutorial misconduct claims lack merit. Further, petitioner has failed to present any credible evidence of his innocence of the crimes for which he was convicted.

Accordingly, the undersigned recommends that petitioner's eighteenth ground for relief be

denied.

**Trial Court Error Claims**

Petitioner alleges trial court error claims in grounds nineteen, twenty, twenty-one, twenty-two, and twenty-three.

**19.      Ground Nineteen**

In his nineteenth ground for relief, petitioner argues that a <u>Batson</u> violation resulted from the strike of Venireperson Waters. Petitioner further argues that the prosecution did not remove a similarly situated white juror, Ms. Katherine Gwinn. Respondent contends that the Missouri Court of Appeals properly found that the prosecutor articulated a race-neutral reason for the exclusion of Mr. Waters and that Ms. Gwinn was not similarly situated.

A three-part analysis is employed to determine the validity of peremptory challenges under <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). <u>See</u> <u>Devoil-El v. Groose</u>, 160 F.3d 1184, 1186 (8th Cir. 1998). Under the first step, a defendant must make a prima facie case of discrimination. <u>See</u> <u>id.</u> "To establish a prima facie case, the defendant must show that [s/he] is a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to remove members of his race from the venire." <u>Devose v. Norris</u>, 53 F.3d 201, 204 (8th Cir. 1995). If a prima facie case is made, the burden shifts to the prosecution to articulate a race-neutral explanation for striking the prospective juror. At stage two, "a court does not weigh the plausibility of the reasons given by the state, but merely determines whether the reasons are facially race-neutral." <u>Gibson v. Bowersox</u>, 78 F.3d 372, 374 (8th Cir. 1996). Finally, "[i]f the government gives a race-neutral reason, the reviewing court must decide whether the defendant has proven purposeful discrimination by evaluating the persuasiveness of the proffered reason."

Gee v. Groose, 110 F.3d 1346, 1351 (8th Cir. 1997). Throughout this process, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curiam). A trial court's ultimate finding on whether a race-neutral explanation is merely a pretext for discrimination is a question of fact, which is presumed correct in the federal habeas context. See Gibson, 78 F.3d at 374. Such findings will only be set aside, absent procedural error, if they are "not fairly supported by the record." Id. (quoting Purkett, 514 U.S. at 769, 115 S.Ct. at 1771).

The record reveals that defense counsel raised a challenge pursuant to Batson, based on the prosecution's strike of Venireperson Anthony Waters because he was African-American. See Resp't Ex. 3 at 1622. The prosecution provided the following race-neutral explanation for the strike:

> [PROSECUTOR]: Mr. Waters indicated that he had an uncle who had been arrested for murder here and I believe he did say it was in the City of St. Louis. And we felt that he might have some bias against City of St. Louis police officers who would testify on behalf of the State in this case. Because of the seriousness of the particular crime with which his uncle was charged, and perhaps some residual feelings that he may have with regards to the police and with the State of Missouri we felt he would not be a good State's juror.

Id. at 1622-23. Defense counsel replied that Mr. Waters indicated that he believed that the system treated his uncle fairly. See id. at 1623. Defense counsel further stated that the State did not strike a white juror, Ms. Gwinn, whose brother was charged with burglary twenty-five years ago. See id. The trial court found that the prosecutor articulated a sufficient race-neutral reason for the use of a peremptory strike on Mr. Waters and overruled defense counsel's Batson motion.

The Missouri Court of Appeals for the Eastern District held that there was no inherently discriminatory intent present in the prosecutor's articulated reasons and the reasons were thus

sufficient to survive a <u>Batson</u> challenge. Resp't Ex. 17 at 6. The Court also found that Ms. Gwinn was not similarly situated for the following reasons: Ms. Gwinn's brother had been convicted for a crime twenty-five years ago, whereas Mr. Waters' uncle was prosecuted only seven years ago; Ms. Gwinn's brother had been prosecuted in Jefferson City, not the City of St. Louis as had Mr. Waters' uncle; and Mr. Waters' uncle had been prosecuted for murder, the crime involved in the instant case, while Ms. Gwinn's brother was convicted for the much less serious crime of burglary. <u>See</u> <u>id.</u> at 6-7.

Petitioner has not demonstrated that the decision of the Missouri Court of Appeals was contrary to, or involved an unreasonable application of, clearly established federal law. The Court properly applied <u>Batson</u> and found that the prosecutor provided a sufficient race-neutral reason for his peremptory strike of Venireperson Waters and that Venireperson Gwinn was not similarly situated. These conclusions are supported by the record. Petitioner has not shown that the prosecution's articulated reason was pretextual.

Accordingly, the undersigned recommends that petitioner's nineteenth ground for relief be denied.

**20.    Ground Twenty**

In his twentieth ground for relief, petitioner argues that trial error occurred when evidence was admitted that petitioner's nickname is "Homicide." Respondent contends that the Missouri Court of Appeals properly found that the trial court's admission of evidence of petitioner's nickname was not erroneous under the circumstances.

Generally, questions concerning the admissibility of evidence are matters of state law, and the issue on habeas review is not whether the evidence was properly admitted under state law. <u>See</u>

Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). However, evidentiary issues can form the basis for habeas relief if the error constitutes an independent constitutional violation. See Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir. 1998). "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." Id. (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996)). To meet this standard, a petitioner must show a reasonable probability that the evidentiary errors affected the trial's outcome. See Meadows v. Delo, 99 F.3d 280, 283 (8th Cir. 1996).

The Missouri Court of Appeals held that the admission of this evidence was not erroneous because courts frequently allow witnesses to refer to a criminal defendant by his nickname if that is the name by which the witness is familiar with the defendant or if it aids in the identification of the defendant. See Resp't Ex. 17 at 8. The Court stated that the trial court allowed Ms. Young to refer to petitioner as "Homicide" because that was the name by which she knew him. See id. at 9. The Court noted that the prosecutor did not attempt to elicit this nickname but, rather Ms. Young spontaneously referred to petitioner as "Homicide" in response to an unrelated question. See id. Finally, the Court found that petitioner has failed to demonstrate prejudice because the prosecutor did not emphasize the fact that Ms. Young had mentioned petitioner's nickname. See id.

Petitioner has not demonstrated that the decision of the Missouri Court of Appeals was contrary to, or involved an unreasonable application of, clearly established federal law. As the Court noted, the prosecutor did not attempt to elicit this nickname from Ms. Young and Ms. Young only mentioned petitioner's nickname because that was the name by which she knew him.

Further, petitioner is unable to show prejudice because the prosecutor did not attempt to draw attention to the fact that Ms. Young had mentioned the nickname.

Accordingly, the undersigned recommends that petitioner's twentieth ground for relief be denied.

### 21.    Ground Twenty-One

In his twenty-first ground for relief, petitioner argues that trial error occurred when the cross-examination of Lakisha Hopson about a forgery charge was limited. Respondent contends that the Missouri Court of Appeals properly held that petitioner never laid a proper foundation that Ms. Hopson had struck a deal on the forgery charge or had reason to believe that her testimony would benefit her case in another jurisdiction.

The Missouri Court of Appeals held as follows with regard to petitioner's claim:

> Here, [petitioner] failed to lay a proper foundation for the introduction of such evidence. [Petitioner] claims that Hopson had numerous reasons to testify favorably for the State. First [petitioner] notes that the State paid Hopson $50.00 per month during the pendency of [petitioner's] trial. [Petitioner] also points out that Hopson was aware of a reward available for anyone who provided information leading to the conviction of the school bus shooter. We are, however, unsure why [petitioner] brings these facts to our attention as he was allowed to cross-examine Hopson on such issues at trial.
>
> [Petitioner] also argues that the fact Hopson had a forgery charge pending against her provided motivation for her to testify in favor of the State. However, [petitioner] provided neither the trial court nor this court with any objective evidence as to a deal struck between Hopson and the State or as to Hopson's subjective belief that such a deal would be struck if she testified favorably for the State. Rather, [petitioner] relies on his own speculation that "Ms. Hopson's perception of the prosecution's power over her pending charge furnished her with a motive to lie." Such speculation and conjecture was insufficient in State v. Harris, 825 S.W.2d 644, 649 (Mo. App. E.D. 1992) to sustain a similar claim made by the Defendant in that case.
>
> [Petitioner] cites State v. Joiner, 823 S.W.2d 50, 53 (Mo. App. E.D. 1991) for the proposition that a defendant is not required to show that a deal is pending or likely in order to demonstrate a motivation for the witness to testify favorably to the prosecution. However, the holding in Joiner is limited to those cases in which the same prosecutor is pursuing charges against both the defendant and the witness. Here, Hopson was being prosecuted in St. Charles County, whereas the Circuit Attorney of the City of St. Louis

prosecuted [petitioner]. Thus, <u>Joiner</u> is inapposite.
  Point denied.

Resp't Ex. 17 at 10-11.

Petitioner has not demonstrated that the decision of the Missouri Court of Appeals was contrary to, or involved an unreasonable application of, clearly established federal law. As the Court properly found, petitioner did not lay a proper foundation for the introduction of evidence of Ms. Hopson's pending forgery charge. Petitioner has failed to present any evidence that a deal would be struck between Ms. Hopson and the State if Ms. Hopson provided testimony favorable to the State or that Ms. Hopson believed that her testimony would benefit her in the jurisdiction where the forgery charge was pending.

Accordingly, the undersigned recommends that petitioner's twenty-first ground for relief be denied.

### 22.  Ground Twenty-Two

In his twenty-second ground for relief, petitioner argues that the trial court erred in limiting the cross-examination of Officer Tolias regarding Ruth Ann Young's income. Petitioner claims that Officer Tolias would have testified that Ms. Young's source of income was heavily dependent upon her providing information helpful to the State. Respondent contends that petitioner has procedurally defaulted this claim by not making an offer of proof as to what Officer Tolias would have said on this issue.

The court has already pointed out that petitioner has procedurally defaulted this claim. Even if it were not procedurally defaulted, petitioner's claim fails on its merits as well. Officer Tolias testified on direct examination that Ms. Young was a paid informant for the North Central Narcotics Unit. <u>See</u> Ex. 3 at 2095. On cross-examination, defense counsel elicited from Officer

Tolias that he paid Ms. Young for the information that she provided to police. See id. at 2100. Officer Tolias testified that neither he nor any other officer to his knowledge paid Ms. Young for the information she provided in the instant case, nor promised Ms. Young a reward for information provided in petitioner's case. See id. at 2097. As such, the total amount of money Ms. Young received for providing information in other unrelated cases is not relevant to this case. Petitioner cannot claim constitutional error in the trial court's limiting the cross-examination of Officer Tolias to exclude irrelevant testimony.

Accordingly, the undersigned recommends that petitioner's twenty-second ground for relief be denied.

### 23. Ground Twenty-Three

In his twenty-third and final ground for relief, petitioner argues that the trial court erred in granting a motion in limine excluding out-of-court statements by Michael Durley and Lonzell Wilkes, in which Durley and Wilkes' brother, Randy, were implicated in the shootings.

The court has already pointed out that petitioner has procedurally defaulted this claim. Even if it were not procedurally defaulted, petitioner's claim fails on its merits as well. The trial court issued the following findings regarding the statements Mr. Durley made to the police:

> On March 7, 1996, Michael Durley was interviewed regarding the February 29, 1996 murder of Kyunia Taylor, by St. Louis City detectives Pappas and Nickerson and confessed to shooting the bus driver Richard Lanemann and Kyunia Taylor. On the same day he was taken to an office within the St. Louis City police department and given a polygraph examination regarding his involvement in the shooting during which time he again stated he shot the bus driver and the girl but then almost immediately after said he lied and that he did not shoot anybody and was not there when the shooting took place. Thereafter, the polygraphist decided to see what reaction he would get if he told Durley he failed the test and Durley said he knew he failed and again stated that he shot the girl and the driver but then moments after said he did not shoot anybody and only made up the story. The polygraphist concluded Durley was truthful when he denied shooting the two on the bus. Thereafter, he was reinterviewed by Sergeant Burgoon wherein Durley stated

he had not told the truth when he confessed in the tape and made the taped statement because he was scared.

      The Court has reviewed the evidence offered with regard to Michael Durley and concludes at this time that there is insufficient indicia of reliability to allow his statements and confession to be admitted. With regard to the first indicia, Durley's confession was in a very real sense self incriminatory and unquestionably against his penal interest such as would exonerate the defendant as the shooter in this crime. The confession was made relatively close in time after the murder. Though there was no evidence the statement was not made voluntarily, statements to the police are not considered as reliable as those made spontaneously to a close acquaintance. One circumstance which has been found to lessen reliability is where a statement was made during a police interrogation while at a police station, as opposed to a more spontaneous statement made to a close fiend. <u>Blakenship</u>, at 8.

      However with respect to the third indicia, that the statements were corroborated by other evidence in the case, the Court does not find substantial corroboration. While Durley's statement that he asked the driver "Is this the bus to Beaumont" and that he shot the driver first is consistent with other proffered evidence, the majority of what Durley states is inconsistent with other evidence in the case. Among other things Durley stated that he shot indiscriminately and that the girl he shot was seated on the passenger side of the bus. Testimony of the two passengers on the bus and the bus driver indicate that Kyunia Taylor was seated behind the driver, not on the passenger side, and that the shooter aimed deliberately at her rather than indiscriminately shooting at everybody in the bus.

      Significantly there is no substantial physical corroboration. The nine millimeter gun Durley said he used in the shooting was never recovered form the location Durley said it could be found. Further the Durley confession was replete with inconsistencies and gaps as to the circumstances and motive surrounding the crime.

Resp't Ex. 9 at 354-56. The trial court held as follows with regard to the statements of Randy

Wilkes:

      In a taped statement to police of March 6, 1996 Lonzell Wilkes said that Randy Wilkes, his brother, told him Durley shot a girl because she was on a bus, then said he shot her because she was laughing about him getting jumped on and that Randy was standing on the corner while the shooting occurred. Lonzell stated that at the time he and Randy were discussing the shooting Durley was outside. Lonzell stated he went outside and started arguing with him about involving Randy in a shooting. Randy denied shooting the girl.

      If true the statements of Randy Wilkes to Lonzell Wilkes do not meet the standard under Missouri law for admissibility because they do not admit responsibility for the shooting and as such do not exonerate the defendant Malik Nettles. The Missouri Supreme Court has narrowly construed the admissibility of third party declarations against penal interest to cases in which hearsay admission by the declarant constituted an acknowledgment of his complicity which if true would also exonerate the defendant. <u>State v. Starks</u>, 820 S.W.2d 527, 531 (Mo. App. 1991); <u>Blakenship</u>, at 8.

The Court gleans from the stipulated Exhibits A7 and A8 that Randy was overheard by other relatives and a detainee at the juvenile detention center making admissions that he was responsible for the murder of Kyunia Taylor. If what Travon Wilkes and Joseph Coleman state are true, that Randy Wilkes shot the victims, then that would exonerate Malik Nettles. On the contrary if what Randy Wilkes stated is true, this does not meet the standard for admissibility for reasons stated herein. If what Lonzell stated is true this would not meet the standard for admissibility. The Court finds that these inconsistencies between the statements make them unreliable.

Id. at 356-57. As previously discussed, the Missouri Court of Appeals found that petitioner's offer of proof failed because it contained inadmissible evidence. See Resp't Ex. 17 at 5. As such, the Court rejected petitioner's claim without addressing its merits. See id.

Petitioner has not shown that the trial court erred in excluding the out-of-court statements of Mr. Durley and Mr. Wilkes. The trial court found that the hearsay evidence petitioner sought to introduce was not reliable and was thus not admissible under applicable law. The court described several inconsistencies in the statements of Mr. Durley and found that his statements were not corroborated by other evidence in the case. The court also found inconsistencies in the statements of Randy Wilkes and noted that Mr. Wilkes' statements would not have exonerated petitioner. Thus, petitioner has failed to demonstrate that the trial court committed constitutional error when it granted the prosecution's motion in limine to exclude the out-of-court statements of Michael Durley and Randy Wilkes.

Accordingly, the undersigned recommends that petitioner's twenty-third ground for relief be denied.

**IV.     Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right.  See 28 U.S.C. § 2253(c)(2); Hunter v. Bowersox, 172 F.3d 1016, 1020 (8th Cir. 1999).  A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.  See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997)(citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)); Tokar v. Bowersox, 1 F. Supp.2d 986, 1016 (E.D. Mo. 1998).  In this case, petitioner has failed to make a substantial showing of the denial of a constitutional right.  The undersigned is not persuaded that the issues raised in his petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no certificate of appealability be issued.

# RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the petition of Malik Nettles for a writ of habeas corpus under 28 U.S.C. § 2254 be **denied**.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability be issued.

The parties are advised they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this __3rd__ day of March, 2006.

LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE